UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JAN 3 1 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-59-GWU

BRENDA C. WILLIAMS,                                               PLAINTIFF,

VS.                **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Williams

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into

2

account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Williams

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Brenda C. Williams, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of dysthymia and borderline intellectual functioning. (Tr. 193). Nevertheless, based in part on the testimony of a medical expert (ME) and a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a motel maid and, therefore, was not entitled to benefits. (Tr. 194-8). The Appeals Council declined to review, and this action followed.

At the most recent administrative hearing, the VE testified that the plaintiff had past relevant work as a waitress as well as a maid, and this job was classified as light exertional level and unskilled. (Tr. 283). The ALJ asked if the plaintiff could perform any of her past relevant work if "the exertion level was not inconsistent," and she would have a "limited but not totally precluded" ability to deal with the public and deal with work stress, and had between a "satisfactory" and a "limited but not totally precluded" ability to deal with detailed but not complex job instructions. (Id.). The VE responded that the waitress job would involve frequent contact with the public, but the plaintiff should be able to perform her past work as a maid. (Tr. 284). The ALJ accepted his testimony, and terminated the sequential evaluation process at the past work analysis.

7

Williams

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

In a prior, final decision dated July 31, 1998, an ALJ had limited the plaintiff to light level exertion with "moderate" limitations in several areas, including understanding, remembering, or carrying out any instructions other than simple ones, interacting appropriately with the general public, responding appropriately to changes in the work setting, working in coordination with or proximity to others without being distracted by them, and maintaining attention and concentration for extended periods of time. (Tr. 21). The ALJ in the present case determined that the objective findings in connection with the present applications, filed in 2002 and 2004, with an Appeals Cpuncil remand (Tr. 305-7) sandwiched in between, showed that the plaintiff had greater ability than previously found for purposes of <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837 (6th Cir. 1997). (Tr. 194, 196 n. 4).

Although the Court transcript contains extensive records of medical treatment, almost all the physicians asked to express an opinion regarding physical functional capacity indicated that the plaintiff had no noticeable impairment, including consultative examiner Dr. Jacob Agamasu in June, 2001 (Tr. 439), Dr. C.P. Batra of the University of Kentucky (UK) Family Practice Clinic, the plaintiff's treating family physicians, in April, 2002 (Tr. 268, 644-5), Consultative Examiner Dr. Mark Burns in January, 2003 (Tr. 72) and another physician at UK Family Practice Clinic, apparently Dr. Sumita Govil, in July, 2003 (Tr. 879, 882). Dr. Govil indicated that the

8

plaintiff's only possible impairment for work was chronic obstructive pulmonary disease (Tr. 879), but pulmonary function testing by Dr. Burns earlier in the year had shown only a mild obstruction (Tr. 703-4), and the plaintiff admitted to different examiners that she smoked approximately one pack of cigarettes a day (Tr. 437, 454, 462, 620, 700). See generally Mullins v. Secretary of Health and Human Services, 836 F.2d 980, 985 (6th Cir. 1987). Various non-examining state agency reviewers agreed that the plaintiff did not have a "severe" impairment. (Tr. 471-2, 697, 709). Most of these opinions came after the plaintiff had been evaluated in December, 2000, for right shoulder pain, by Dr. M. Sharma, who obtained normal x-rays and an MRI which Dr. Sharma initially indicated showed "mild impingement" with some fluid in the subacromial bursa. (Tr. 462, 464, 544). However, the actual MRI report shows only "some fatty infiltration of the marrow" (Tr. 464), and a subsequent office note by Dr. Sharma does describe the MRI as "normal" (Tr. 546).

The only evidence of greater restrictions comes in a form which the plaintiff apparently asked Dr. Govil to fill out in July, 2003, which indicates that she is capable of less than full-time sitting, standing, and walking and had numerous other restrictions due to right shoulder pain and weakness, shortness of breath, generalized fatigue, low back pain, and left knee pain. (Tr. 744-6). The form was apparently filled out and also signed by someone else, however, and neither of the signatures is entirely clear. (Tr. 746). Even if it is signed by Dr. Govil, the limitations listed are inconsistent with Dr.Govil's office notes, previously cited. Furthermore,

9

counsel for the plaintiff stated at the administrative hearing that "we've been unable to actually nail down the person who signed that" and he thought the form had been sent from Kentucky River Community Care (KRCC), a mental health clinic which was treating the plaintiff for depression and nervous complaints (Tr. 279). In addition to all these factors, which detract from its weight, the plaintiff does not raise the issue of this assessment on appeal.

The plaintiff does argue on appeal that the ALJ should have found her disabled under Rule 201.09 of the Commissioner's Medical-Vocational Guidelines (the "grids"), which applies to an individual limited to sedentary exertion and closely approaching advanced age, with a limited education, and unskilled or no work experience. However, the plaintiff was not limited to sedentary level exertion. The ALJ did not even find any "severe" physical impairments, and since the VE described her past relevant work as being at the light level, and the ALJ asked the VE to send that the hypothetical individual's "exertion level was not inconsistent" with that job, it can be assumed that the ALJ would have found the plaintiff capable of at least "light" exertion. The applicable grid rule, therefore, would be 202.10 or 202.11, both of which indicate that the person would be "not disabled." In any case, it was the plaintiff's burden at the past relevant work stage to prove that she could not actually perform her past work before proceeding to consider the grids. Therefore, this argument is without merit.

The plaintiff also alleges that the ALJ did not properly evaluate her complaints of subjective pain under the standards set out in <u>Duncan v. Secretary of Health and Human Services</u>, 801 F.2d 847 (6th Cir. 1986). This requires an ALJ to consider: 1) whether objective evidence confirms the severity of the alleged pain arising from the condition; and 2) whether the objectively established medical evidence is of such severity that it can reasonably be expected to produces the alleged disabling pain. <u>Id.</u> at 853. Since the ALJ did not find that the plaintiff even had a severe physical impairment, his discussion (Tr. 193-6) was adequate in this regard, particularly in view of the lack of objective findings and the opinions of the examining sources.

Therefore, substantial evidence supports the ALJ's finding that the plaintiff had no physical restrictions.

Regarding mental impairments, the ME, Dr. Dixie Moore, testified at two administrative hearings, and concluded that the plaintiff had a mental impairment best described as a major depressive disorder (considered by one examiner to be in partial remission but still present), post traumatic stress disorder (including avoidance traits), and substance abuse in full sustained remission. (Tr. 276). There was also an indication by a consultative psychological examiner, Dr. Robert Fitz, that the plaintiff had borderline intellectual functioning, but treatment notes from KRCC did not indicate any problems in this area. (Tr. 276). Dr. Moore indicated that the plaintiff would have a "poor" (defined as "limited but not totally precluded") ability to deal with the public and deal with work stresses as well as to understand, remember,

11

Williams

and carry out complex job instructions. (Tr. 277-8). She would have a "fair to poor" ability with detailed but not complex instructions. (Tr. 278).

The plaintiff does not specifically challenge Dr. Moore's conclusions on appeal, and there is substantial evidence in the transcript to support them. The plaintiff testified to nervousness, a history of abuse, dislike of crowds, and a psychiatric admission for a suicide attempt well before she stopped working. (Tr. 243, 252-6). The medical evidence shows that she was referred to KRCC by her family physician, Dr. Julie Kennon of UK Family Practice, in September, 1998 (Tr. 430-1), and that Dr. Kennon completed a "paper for her saying she has had long-term anxiety and depression, as well as many psychological problems, that do cause her to be somewhat mentally disabled, in order to get an apartment on her own and be able to move out from her husband." (Tr. 419). Records from KRCC show that the plaintiff discontinued treatment of her own volition shortly thereafter. (Tr. 584). Although she did resume treatment, Dr. Cletus Carvalho of KRCC completed an assessment on May 11, 2002, which diagnosed the plaintiff with post traumatic stress disorder, major depressive disorder, and avoidant personality traits, and gave an Axis V (global assessment functioning) score of 71-80. (Tr. 667-70). A GAF score in this range reflects only transient symptoms and "no more than slight impairment in social, occupational, or school functioning" per the <u>Diagnostic and Statistical Manual of Mental Disorders</u> (Fourth Edition-Text Revision), p. 34. Likewise, the consultative psychological examiners, William Rigby and Robert Fitz,

Williams

examined the plaintiff and reached conclusions that were consistent with the ME. (Tr. 493-7, 710-17). One examiner, Amy Goodson, a "psychology intern" supervised by Brenda Hughes, a licensed psychologist, examined the plaintiff in September, 2003 and found no useful ability to make most occupational and performance adjustments and a "seriously limited but not precluded" ability to make most personal/social adjustments. (Tr. 737-47). However, this one-time examination would not be entitled to greater weight than the one-time evaluations of Rigby and Fitz, even assuming that there would be no questions regarding Goodson's qualifications under 20 C.F.R. Section 416.913(a).

The decision will be affirmed.

This the ___31___ day of January, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE

13